## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-24346-CIV-GAYLES/OTAZO-REYES

MANACASH KEFEENIE,

      Plaintiff,

v.

THE GLORIA MARTIN TRUST,

      Defendant.

_____/

## DEFENDANT'S SUMMARY JUDGMENT MOTION
## WITH INCORPORATED MEMORANDUM OF LAW

Defendant, **THE GLORIA MARTIN TRUST** (the "**Trust**"), pursuant to Fed. R. Civ. P. 56, moves the Court to enter an Order granting summary judgment against Plaintiff **MANACASH KEFEENIE** (properly, Manachash Kefenie) ("**Plaintiff**").

## SUMMARY OF ARGUMENT

Gloria Martin ("**Mrs. Martin**") employed Plaintiff as a live-in domestic service employee from the mid-1990s to 2005.  In 2010, Mrs. Martin re-hired Plaintiff when her live-in domestic service employee resigned.

By 2011 or 2012, Mrs. Martin encountered memory loss problems and significant health issues.  Unfortunately, Mrs. Martin's mental and physical condition worsened.  She rapidly evidenced signs of dementia and became unable to take care of herself by 2015.

In 2003, Mrs. Martin created the Trust, in part, to protect and assist her if she became incapacitated. Given Mrs. Martin's incapacity in May 2015, the Trust commenced managing Mrs. Martin's assets on her behalf, and retained Plaintiff as a live-in domestic service employee.

The Trust offered Plaintiff a generous written employment agreement so as to retain her services.  However, Plaintiff rejected the written employment agreement, as well as all other employment offers the Trust made by making additional and unreasonable demands.  Plaintiff's

unreasonable demands included that the Trust must give her the funds to purchase a residence (worth $400,000), a lump sum payment of $300,000, a lifetime pension (beginning prior to retirement age), a six figure annual salary for lifetime employment, and pay all her federal income taxes for the remainder of her life.

On May 20, 2016, the Trust presented its final offer for a written employment agreement. However, Plaintiff rejected the Trust's offer and informed the Trust that she was "packing her belongings" and leaving employment.  On June 2, 2016, the Trust advised Plaintiff that, given her statements that she was leaving, the Trust considered her to have resigned.

Plaintiff sues the Trust alleging breach of oral employment contract (Count I); breach of contract (Count II); unjust enrichment (Count III); fraud in the inducement (Count IV); and overtime violations under the Fair Labor Standards Act (the "**FLSA**") (Count V).  In sum, Plaintiff alleges that the Trust failed to (i) pay her a monthly salary of $2,816.00, (ii) grant her lifetime employment, and (iii) provide overtime pay for the 136 hours that she purportedly worked each week.

The Court should grant summary judgment.  *First*, as to Counts I and III, the Trust paid Plaintiff for all the time that she worked, and her monthly wages always exceeded $2,816.00. *Second*, as to Count II, no written employment agreement exists.  Moreover, contracts for "lifetime" employment are unenforceable for indefiniteness, lack of mutuality, and failure of consideration.  *Third*, as to Count IV, Plaintiff cannot establish any elements of a fraudulent inducement claim, rely on an unenforceable promise of "lifetime" employment, or recover in tort for the exact same damages as for a breach of contract.  *Fourth*, as to Count V, Plaintiff is not entitled to overtime pay pursuant to the FLSA's live-in domestic service exemption (29 U.S.C. § 213(b)(21)) or its companionship exemption (29 U.S.C. § 213(a)(15)).

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## FACTS

**A.      Plaintiff's Employment as a Live-In Domestic Service Employee.**

From the mid-1990s to 2005, Mrs. Martin employed Plaintiff as a live-in domestic service employee.  DE 46-1, Kalos Decl. ¶ 3. In 2010, Mrs. Martin re-hired Plaintiff when her live-in domestic service employee resigned.  *Id.* ¶ 4.  From 2010 until May 2015, Plaintiff performed services as Mrs. Martin's live-in domestic service employee and slept in Mrs. Martin's residence for, at least, five nights each week.  *Id.* ¶ 5.

By 2011 or 2012, Mrs. Martin encountered memory loss problems and other significant health issues.  DE 46-1, Kalos Decl. ¶ 6. Unfortunately, Mrs. Martin's mental and physical condition deteriorated and she rapidly evidenced signs of dementia.  *Id.*  By May 2015, Mrs. Martin was unable to take care of herself.  *Id.* ¶ 7.

In 2003, Mrs. Martin established and funded the Trust via the Gloria Martin Declaration of Trust dated June 25, 2003, as amended.  DE 46-1, Kalos Decl. ¶ 8.  The Trust is an estate planning vehicle known as a "living trust" designed, in part, to protect Mrs. Martin in the event of her incapacity.  *Id.*  Louis Nostro, Esq. ("**Mr. Nostro**"), who has been Mrs. Martin's estate planning attorney since 2003, and Schmuel Kalos ("**Rabbi Kalos**"), who has been Mrs. Martin's spiritual advisor since the 1990s, are the designated trustees (the "**Trustees**").  *Id.* ¶¶ 8-9.

In May 2015, the Trust commenced acting on Mrs. Martin's behalf and managing her assets as a result of her incapacity.  DE 46-1, Kalos Decl. ¶ 10.  Given Mrs. Martin's illness and disability, as well as her inability to care for herself, the Trust retained Plaintiff as a live-in domestic service employee.  *Id.* ¶ 11.  Plaintiff continued to reside and sleep in Mrs. Martin's residence for, at least, five nights each week.  *Id.*

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

**B.    Plaintiff's At-Will Employment.**

Plaintiff's employment as a live-in domestic service employee was at-will.  DE 46-1, Kalos Decl. ¶ 12.  From May 2015 until May 2016, the Trust attempted to formalize Plaintiff's employment relationship through a written employment agreement.  *Id.* ¶ 13.  However, Plaintiff rejected every offer the Trust made for a written employment agreement.  *Id.*

In August 2015, the Trust presented Plaintiff with a proposed employment offer.  DE 46-1, Kalos Decl. ¶ 14.  However, Plaintiff rejected the Trust's offer, and requested the following:

> If possible I want be there and work for Ms. Martin as long as she lives. If not I need ***3-4 years of job security***. This is very important to me because throughout all these years (with the exception of the last 2 years) I was not getting paid what I deserved comparing to the amount of hours I worked and my loyalty to her.

DE 46-2, Ex. 1, Sept. 6, 2015 Email (emphasis added). Concerned about Mrs. Martin's need to be attended by someone whom she recognized given her incapacity, Plaintiff and the Trustees met and discussed employment terms from August to November 2015.  DE 46-1, Kalos Decl. ¶ 16; *see also* DE 46-2, Ex. 2, Oct. 7, 2015 Email.

In November 2015, the Trust presented Plaintiff with a written employment agreement based on the parties' discussions.  DE 46-1, Kalos Decl. ¶ 17; DE 46-2, Ex. 3, Employment Agmt.  In fact, the Trustees signed the proposed employment agreement.  *Id.*  The proposed employment agreement more than doubled Plaintiff's monthly wages. DE 46-1, Kalos Decl. ¶ 18.  However, Plaintiff rejected the employment agreement and requested additional terms, claiming that she may have potential claims against Mrs. Martin.  *Id.*

From December 2015 through January 2016, the Trustees met with Plaintiff and presented her with additional employment terms.  DE 46-1, Kalos Decl. ¶ 19.  However, Plaintiff continued to reject the Trust's employment offers.  *Id.*

On February 3, 2016, the Trust presented Plaintiff with an employment offer, which also included a resolution of Plaintiff's purported claims against Mrs. Martin.  DE 46-1, Kalos Decl. ¶

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

20; DE 46-2, Ex. 4, Feb. 3, 2016 Email.  Plaintiff rejected the Trust's February 3, 2016 offer. DE 46-1, Kalos Decl. ¶ 21.

From February to May 2016, the Trust continued to negotiate with Plaintiff to reach an acceptable employment agreement.   DE 46-1, Kalos Decl. ¶ 22.   However, Plaintiff's employment demands became outrageous.  *Id.* ¶ 23.  Plaintiff demanded lifetime employment, and that the Trust purchase a residence for her, provide her with lump sum settlement payments tax free, give her a guaranteed pension for life (beginning prior to normal retirement age), pay her a six figure annual salary, and pay her federal income taxes for the remainder of her life.  *Id.; see also* DE 46-2, Ex. 5, May 4, 2016 Email.  The Trust rejected Plaintiff's unreasonable employment demands.  DE 46-1, Kalos Decl. ¶ 24.

On May 20, 2016, the Trust conveyed its final offer for a written employment agreement between the parties.  DE 46-1, Kalos Decl. ¶ 25; DE 46-2, Ex. 6, May 20, 2016 Email.  The Trust's offer provided settlement payments, significant wage increases, a one year's guaranteed pay should Mrs. Martin pass away during the employment agreement's first year, one-year's severance should Plaintiff be terminated without cause, significant retirement benefits, and the purchase of an annuity for Plaintiff.  DE 46-1, Kalos Decl. ¶ 26. However, Plaintiff rejected the Trust's employment offer and made additional unreasonable financial demands.  *Id.*

On May 23, 2016, Plaintiff informed the Trustees that she was packing her belongings and leaving her employment.  DE 46-1, Kalos Decl. ¶ 27; DE 46-2, Ex. 7, June 2, 2016 Email. On June 2, 2016, the Trust informed Plaintiff that, given her rejection of the last employment offer and her statement that she was packing and leaving, the Trust considered her to have resigned:

> The Gloria Martin Trust has attempted for several months to finalize an employment agreement with you.  As you know, the employment terms offered to you were extremely generous.  Unfortunately, you have rejected all of our prior offers.  You have demanded, among other things, that we fund the purchase of a

residence, lump sum payments, a guaranteed pension for life (beginning prior to normal retirement age), a six figure annual salary and that the Trust pay all income taxes on lump sum benefits paid to you.

We last spoke by telephone on Monday, May 23, 2016 about your continued employment. You declined our latest employment offer and made, in my view, additional unreasonable financial demands. You told me that you were packing your belongings and leaving. I informed you that you should do so and that we have to part ways.

DE 46-1, Kalos Decl. ¶ 28; DE 46-2, Ex. 8, June 2, 2016 Separation Letter.

## C.    The Trust Fully Compensated Plaintiff for her Wages.

The Trust fully compensated Plaintiff for the time that she worked. DE 46-1, Kalos Decl. ¶ 29. In May 2015, Plaintiff informed the Trust that Mrs. Martin allegedly owed her a total of $18,700 in back wages for the period from January 17 to May 16, 2015. *Id.* ¶ 30; DE 46-2, Ex. 9, May 14, 2015 Email. Accordingly, the Trust paid Plaintiff the alleged back wages that Mrs. Martin owed. DE 46-1, Kalos Decl. ¶ 31; DE 46-2, Ex. 10, Check Payments (Check. No. 81879415).

In May 2015, the Trust paid Plaintiff $4,400 for work performed. DE 46-1, Kalos Decl. ¶ 33. This amount is comprised of $2,200 from Check No. 81879415 ($18,870) and $2,200 from Check No. 259 ($4,400). *Id.; see also* DE 46-2, Ex. 10, Check Payments.

In June 2015, the Trust paid Plaintiff $3,964 for work performed. DE 46-1, Kalos Decl. ¶ 34. This amount is comprised of $2,200 from Check No. 259 ($4,400); $1,500 as vacation pay via Check No. 286; and $264.00 for one additional day in June via Check No. 301. *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For July 2015, the Trust paid Plaintiff $3,000.00 for work performed. DE 46-1, Kalos Decl. ¶ 35. This amount is comprised of $3,000.00 from Check No. 285. *Id.; see also* DE 46-2, Ex. 10, Check Payments.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

For August 2015, the Trust paid Plaintiff $4,285.00 for work performed via Check No. 300.  DE 46-1, Kalos Decl. ¶ 36*; see also* DE 46-2, Ex. 10, Check Payments.

For September 2015, the Trust paid Plaintiff $7,500.00 for work performed via Check No. 304.  DE 46-1, Kalos Decl. ¶ 37.*; see also* DE 46-2, Ex. 10, Check Payments.

For October 2015, the Trust paid Plaintiff $11,250.00 for work performed.  DE 46-1, Kalos Decl. ¶ 38.  This amount is comprised of $7,500 from Check No. 376 ($15,000.00), and $3,750.00 via Check No. 436.  *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For November 2015, the Trust paid Plaintiff $7,500.00 for work performed via Check No. 376 ($15,000.00).  DE 46-1, Kalos Decl. ¶ 39; *see also* DE 46-2, Ex. 10, Check Payments.

For December 2015, the Trust paid Plaintiff $10,178.50 for work performed.  DE 46-1, Kalos Decl. ¶ 40.  This amount is comprised of $7,500 via Check No. 393, and $2,678.50 via Check No. 420.  *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For January 2016, the Trust paid Plaintiff $7.500.00 for work performed.  DE 46-1, Kalos Decl. ¶ 41.  This amount is comprised of $1,875.00 via Check No. 421; $1,875.00 via Check No. 347; and $3,750.00 via Check No. 383.  *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For February 2016, the Trust paid Plaintiff $7.641.60 for work performed.  DE 46-1, Kalos Decl. ¶ 42.  This amount is comprised of $4,000.00 via Check No. 366; $1,625.00 via Check No. 367; $1,875.00 via Check No. 369; and $141.60 via Check No. 360.  *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For March 2016, the Trust paid Plaintiff $11,250.00 for work performed.  DE 46-1, Kalos Decl. ¶ 43.  This amount is comprised of $3,750.00 via Check No. 322; $5,000.00 via Check No. 335; and $2,500.00 via Check No. 338.  *Id.; see also* DE 46-2, Ex. 10, Check Payments.

For April 2016, the Trust paid Plaintiff $13,124.00. DE 46-1, Kalos Decl. ¶ 44. This amount is comprised of $5,000.00 via Check No. 600; $2,500.00 via Check No. 601; $2,812.00 via Check No. 608; and $2,812.00 via Check No. 609. *Id.;* DE 46-2, Ex. 10, Check Payments.

For May 2016, the Trust paid Plaintiff $7,500.00. DE 46-1, Kalos Decl. ¶ 45. This amount is comprised of $3,750.00 via Check No. 639, and $3,750.00 via Check No. 640. *Id.; see also* DE 46-2, Ex. 10, Check Payments.

After her separation of employment, Plaintiff alleged that she was purportedly owed one week's pay ($1,875.00). DE 46-1, Kalos Decl. ¶ 46. Pursuant to her allegation, on August 4, 2016, the Trust paid Plaintiff $1,875.00 via Check No. 769. *Id.; see also* DE 46-2, Ex. 10, Check Payments.

## **PROCEDURAL HISTORY**

On December 21, 2016, Plaintiff filed this lawsuit in state court. *See* DE 1-4. At the time, two law firms represented Plaintiff: Forrest Sygman, P.A. (including Forrest Sygman, Esq., and Dana Esposito, Esq.) and Brian H. Pollock, Esq. The parties agreed to an early mediation, which took place on January 30, 2017. On February 2, 2017, three days after mediation, Plaintiff's attorneys filed their motion to withdraw as counsel. *See* DE 1-8 & 1-9.

On July 12, 2017, Plaintiff filed her Amended Complaint against the Trust through attorney Dameka L. Davis, Esq. *See* DE 1-23. On November 28, 2017, Plaintiff filed her Second Amended Complaint (incorrectly titled "Third Amended Complaint"). *See* DE 1-2. That same day, Ms. Davis filed her motion to withdraw as counsel. *See* DE 1-33. On December 1, 2017, the Trust filed its Notice of Removal.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

## ARGUMENT

### I.   PLAINTIFF CANNOT ESTABLISH A BREACH OF ORAL EMPLOYMENT CONTRACT OR UNJUST ENRICHMENT.

In Count I (Breach of Oral Employment Contract), Plaintiff alleges that she was promised a monthly wage of $2,816.00 to be Mrs. Martin's sole caretaker, and that she was not paid her wages:

> 36.   Plaintiff entered into an oral contract for employment with Defendant under which, for services performed by Plaintiff as the sole caretaker of Mrs. Martin, the Defendant was going to pay Plaintiff $2,816.00 monthly.
>
> 37.   Plaintiff performed the services requested and required of her, despite demand thereof, she was not paid the wages she was promised per the oral agreement. (*Id.* at Exhibit 1).
>
> 38.   Thus, the Defendant has breached the employment contract by failing to pay Plaintiff her promised and due wages for the services performed.

DE 1-2, Second Am. Compl. ¶¶ 36-38.

Plaintiff is wrong since she earned and received more than $2,816.00 per month.  As the checks evidencing Plaintiff's wage payments demonstrate, the Trust paid Plaintiff between $3,000 and $13,124 each month.  Accordingly, the Court should grant summary judgment as to Count I.

Similarly, Plaintiff pleads Count III (Unjust Enrichment) in the alternative to Count I. Plaintiff states that she "gave Defendant benefits but was not compensated fully for her services."  DE 1-2, Second Am. Compl. ¶ 48.  The Court should grant summary judgment on Count III for the same reasons as Count I: the wage payment checks evidence that Plaintiff earned and received more than the alleged $2,816.00 monthly salary.

### II.   PLAINTIFF CANNOT ESTABLISH A BREACH OF LIFETIME CONTRACT CLAIM.

In Count II (Breach of Contract), Plaintiff argues that she entered into a contract for "lifetime" employment.  Specifically:

- 9 -

42.     Plaintiff and Defendant entered into a valid and enforceable employment contract.

43.     The Employment Contract was memorialized in a writing.  (*Id.* at Exhibit 2).

DE 1-2, Second Am. Compl. ¶¶ 42-43.   The "writing" attached to the Second Amended Complaint is an email ("**Mrs. Kalos' Email**") from Yael Kalos, who is Rabbi Kalos' wife, and states:

I Yael Kalos, will manage Sasha during her employment. I will retain her permanently. I will not release her for as long as she wants employment. She will report only to me.  Yael Kalos

*Id.,* Ex. 2.  Mrs. Kalos is not a Trustee.

The Court should grant summary judgment on Count II for three reasons.

*First*, Mrs. Kalos' Email is **not** an employment contract.  Under Florida law, employment contracts that do not specifically obligate the contracting parties to a **definite term** of employment are **terminable at will** and will not support a breach of contract claim for damages. *Smith v. Piezo Tech. & Prof. Admr's*, 427 So. 2d 182, 184 (Fla. 1983); *De Felice v. Moss Mfg., Inc.,* 461 So. 2d 209, 210 (Fla. 3d DCA 1984) ("insofar as it adjudges that the employment contract between the parties does not specifically obligate them for a definite term of employment, is therefore terminable at will, and does not support [plaintiff's] claim for salary"); *DeMarco v. Publix Super Markets, Inc.,* 360 So. 2d 134, 136 (Fla. 3d DCA 1978), *opinion aff'd and adopted by,* 384 So. 2d 1253 (Fla. 1980) ("The established law is that where the term of employment is discretionary with either party or indefinite, no action may be maintained for breach of the employment contract"); *Harrison v. Palm Harbor MRI, Inc.,* 703 So. 2d 1117, 1119 (Fla. 2d DCA 1997) ("a breach of contract claim may not be brought on a contract that is not of definite duration."); *Gibbs v. H.J. Heinz Co.*, 536 So. 2d 370, 371 (Fla. 5th DCA 1988). In *Wynne v. Ludman Corp.*, the Florida Supreme Court held:

> No action can be maintained for the breach of a contract to employ unless there is some stipulation as to the length of time for which the employment shall continue. ***If a term of employment be discretionary with either party, or be indefinite, either party may terminate it at any time.***

*Wynne v. Ludman Corp.,* 79 So. 2d 690, 691 (Fla. 1955) (emphasis added).

In *Roy Jorgensen Assoc. v. Deschenes,* 409 So. 2d 1188 (Fla. 4th DCA 1982), the plaintiff and employer signed a document which stated that the plaintiff would work on a project in Ecuador for 28 months. *Id.* at 1189. The plaintiff was terminated shortly after commencing employment, and sued the employer for breach of contract alleging that the employment contract was for a definite 28-month period. *Id.* The trial court agreed. *Id.* at 1190.

On appeal, the *Roy Jorgensen* court **reversed**, held that the 28-month period did not establish an employment agreement, and stated that "it is settled law in Florida that an employment contract which does not contain a definite term of employment is terminable at the will of either party without cause." *Id.* The court explained that the 28-month period was simply an expectation, and not a term of employment. *Id.* at 1190 (citing *Buian v. J.L. Jacobson Co.,* 428 F.2d 531 (7th Cir. 1970)).

In the absence of a contract for a specified length of time, employees in Florida are considered to be at-will. *See DeMarco,* 384 So. 2d at 1254. An at-will employment relationship may be terminated at any time and for any reason, including no reason, by either party. *See Muller v. Stromberg Carlson Corp.,* 427 So. 2d 266, 270 (Fla. 2d DCA 1983) ("[i]t is settled law in Florida that an employment contract which is indefinite as to term of employment is terminable at the will of either party without cause.").

***Second***, Plaintiff admits in her interrogatory responses that the parties did not enter into a written employment agreement:

> ***We were in the process [of] signing employment agreement before my sudden termination***. Every time we made changes to the employment agreement, we always agreed orally first. Since I was not given any draft right after our oral

agreement, each time I receive[d] the finalized employment contract it was totally different from what we agreed upon orally.

DE 46-3, Pl. Interrog. Response No. 10 (emphasis added).

**Third,** attempting to avoid the at-will doctrine, Plaintiff argues that Mrs. Kalos' Email is a "**lifetime**" employment contract based on Mrs. Martin's life. "Contracts for 'lifetime' or 'permanent' employment are not favored in the law, and courts rarely enforce them because of their indefiniteness and uncertainty." *Hesston Corp. v. Roche*, 599 So. 2d 148, 150 (Fla. 5th DCA 1993). Contracts for lifetime employment are typically unenforceable and fail for indefiniteness, lack of mutuality, and failure of consideration. *See Hamlen v. Fairchild Indus., Inc.*, 413 So. 2d 800, 800-01 (Fla. 1st DCA 1982) (finding that an employee's claim of breach of oral contract of permanent employment failed for lack of mutuality and reasoning that a contract for permanent work is an "indefinite hiring" subject to the at-will doctrine).

As the court observed in *Hesston*:

> [S]uch promises of "lifetime" employment are usually "oral uncorroborated, vague in import and details and highly improbable." Also, courts question the inherent fairness of an agreement that places the entire burden of the long-term commitment on the employer since no comparable commitment exists on the part of the employee[.]

*Hesston*, 599 So. 2d at 151 (internal citations omitted).

In sum, Plaintiff has not, and cannot, allege that an employment contract exists with a definite and fixed duration. Rather, she concedes that no written employment agreement exists. Moreover, any "lifetime" contract lacks mutuality and Plaintiff has not provided any consideration to support such an agreement. Accordingly, the Court should grant summary judgment as to Count II.

**III.    PLAINTIFF CANNOT ESTABLISH A FRAUD IN THE INDUCEMENT CLAIM.**

In Count IV (Fraud in the Inducement), Plaintiff alleges that "the Defendant made false representations to Plaintiff to induce her of not leaving and finding another job." Second Am.

Compl. ¶ 53.  Plaintiff's only purported "misrepresentation" identified in the Second Amended Complaint is that, "In exchange for the Plaintiff not suing the Defendant, she would receive increased pay, retirement benefits, and continued employment by the Defendant." *Id.* ¶ 53(b).  In her interrogatory responses, Plaintiff identified one additional "misrepresentation": "Yael [Kalos] repeatedly told me [that] I and my husband are the one[s] designated to take care of Mrs. Martin to the end."  DE 46-3, Pl. Interrog. Response No. 12.

The Court should grant summary judgment as to Count IV for the following five reasons.

**First**, a fraud in the inducement claim requires "(1) a misrepresentation of a material fact; (2) knowledge by the person making the statement that the representation is false; (3) intent by the person making the statement that the representation would induce another to rely and act on it; and (4) that the plaintiff suffered injury in justifiable reliance on the representation." *Tomasini v. Mount Sinai Med. Cntr.*, 315 F. Supp. 2d 1252 (S.D. Fla. 2004).

In this case, Plaintiff cannot prove any of the elements.  The Trust repeatedly offered Plaintiff increased pay, retirement benefits, and continued employment.  These offers included, but were not limited to, the November 2015 draft of the written employment agreement (which the Trustees signed, but Plaintiff rejected), the February 3, 2016 employment offer delivered via email, and the May 20, 2016 employment offer.  However, Plaintiff rejected each of the Trust's employment offers.

Moreover, Plaintiff cannot demonstrate any reliance. When the employment contract negotiations commenced, Plaintiff admitted that she did not want to work anywhere else:

> Because of the emotional attachment we have, after many attempts, I could not imagine myself working for someone else.  When it comes to caring for Ms. Martin, it is not just only about a job and getting paid.  It is about caring, love, and compassion too.  Despite all difficult circumstances surrounding the job, I just made a difficult choice to renew my commitment and begin the most challenging new journey with Ms. Martin. . . .  Please note that, if I am allowed, I want to be there for Ms. Martin anytime regardless of the outcome of this contract agreement.

- 13 -

DE 46-2, Ex. 1, Sept. 6, 2015 Email.  Accordingly, Plaintiff cannot prove any of the elements of a fraudulent inducement claim.

*Second*, Plaintiff concedes that her fraudulent inducement claim is based on a lifetime employment claim: "Yael [Kalos] repeatedly told me [that] I and my husband are the one[s] designated to take care of Mrs. Martin to the end."  Pl. Interrog. Response No. 12, at 19.  As explained in Section II, *infra,* promises of lifetime employment are unenforceable.  A party cannot rely to his/her detriment on an unenforceable promise.  *Canell v. Arcola Hous. Corp.,* 65 So. 2d 849, 850-51 (Fla. 1953).  An unfulfilled promise to perform something in the future is not actionable.  *Bruce v. Am. Dev. Corp.,* 408 So. 2d 857, 858 (Fla. 3d DCA 1982).  "Clearly, one is not justified in relying upon some action which the other party is not required to perform."  *Id.*

In *Bankers Trust Co. v. Basciano,* 960 So. 2d 773 (Fla. 5th DCA 2007), the plaintiff claimed that he was induced to fund a hotel while a workout agreement involving the hotel's mortgage loan was being negotiated, and that the defendants "promised to work cooperatively with [plaintiff] to restructure the loan in a manner consistent with the appraisal's valuation of the hotel in order to give the hotel a reasonable chance of succeeding as a going concern."  *Id.* at 777-78.  The jury found for the plaintiff and awarded $1.6 million dollars.  *Id*. at 774.

On appeal, the *Bankers Trust* court reversed the award, and found that the trial court erred when it failed to grant summary judgment or JNOV on the negligent misrepresentation claim. *Id*. at 780. The *Bankers Trust* court found that the negligent representation claim was premised on representations that were insufficient to form a contract and were merely derivative of an unsuccessful contract claim.  *Id*. at 778 (*citing Mark Andrew of Palm Beaches Ltd. v. GMAC Commercial Mortg. Corp.*, 265 F. Supp. 2d 366, 382 (S.D.N.Y. 2003) (holding that under Florida law, when statute of frauds prohibited plaintiff from enforcing an oral contract, claims for fraud and negligent misrepresentation seeking damages based on same conduct and

representations are merely derivative of claim for breach of contract and are prohibited)).  The *Bankers Trust* court held that the defendants' statements were unenforceable promises, the plaintiff "cannot rely to his detriment on an unenforceable promise," and plaintiff could not have justifiably or reasonably relied on the alleged misrepresentations because "one is not justified in relying upon some action which the other party is not required to perform."  *Bankers Trust*, 960 So. 2d at 778 (internal citation omitted).

Because Plaintiff is an at-will employee who could be terminated at any time, no reliance exists on an unenforceable promise.  *See Leonardi v. City of Hollywood,* 715 So. 2d 1007, 1009 (Fla. 4th DCA 1998) (finding that reliance on an at-will employment offer was unreasonable based on § 90 of the Restatement (Second) of Contracts and citing that ***"[t]he Court finds that reliance on a promise consisting solely of at-will employment is unreasonable as a matter of law*** since such a promise creates no enforceable rights in favor of  the employee other than the right to collect wages accrued for work performed.") (emphasis added).

***Third***, Plaintiff's fraudulent inducement claim for lifetime employment is derivative of Plaintiff's claim for breach of oral contract.  *See Hertz v. Salman*, 718 So. 2d 942, 942 (Fla. 3d DCA 1998) ("The other claims brought by plaintiff are likewise barred, as they flow from the alleged oral contract, and are merely derivative.").  As such, the claim violates Florida's Statute of Frauds since it was intended to last for well over a year.   Section 725.01, Fla. Stat. ("**Section 725.01**"), codifies the Statute of Frauds and states that "No action shall be brought ... to charge any person ... upon any agreement that is not to be performed within the space of one year from the making thereof…."   § 725.01, Fla. Stat.   Therefore, an oral promise is only enforceable if it is "to be performed within the space of one year from the making thereof. . . ." *Id.*  The Statute of Frauds is strictly construed and courts must be reluctant to take cases from its protection. *Tanenbaum v. Biscayne Osteopathic Hosp., Inc.,* 190 So. 2d 777, 779 (Fla. 1966).

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

In *Tanenbaum*, the defendant verbally represented that it would employ the plaintiff for five (5) years, but terminated the plaintiff's employment in seven (7) months.  The trial court entered judgment for the defendant finding that the Statute of Frauds barred the oral representations of five (5) year employment.  The Third District Court of Appeal affirmed, but referred to the Florida Supreme Court as to whether a promissory estoppel claim could succeed on the same facts in spite of the Statute of Frauds.  The Florida Supreme Court affirmed, refused to allow the plaintiff to abrogate the Statute of Frauds by asserting a tort claim, and explained:

> The statute of frauds grew out of a purpose to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos. To accomplish this, the statute requires that all actions based on agreements for longer than one year must depend on a written statement or memorandum, signed by the party to be charged.  ***The statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection.***

*Tanenbaum*, 190 So. 2d at 779 (emphasis added) (internal citation omitted).

Since negotiations commenced, Plaintiff admitted that any employment contract **must** exceed one year and, at the very least, three or four years:

> 1. If possible I want [to] be there for Ms. Martin as long as she lives.  If not ***I need 3-4 years of job security.  This is very important to me*** because throughout all these years (with the exception of the last two years) I was not getting paid what I deserved. . . .

DE 46-2. Ex.1, Sept. 6, 2015 Email (emphasis added).   Thus, the alleged promise is unenforceable because it is premised on an oral contract that would exceed one year.

***Fourth***, Plaintiff's fraudulent inducement claim is improper because "Florida does not allow a party damaged by a breach of contract to recover the exact same contract damages via a fraud claim."  *Peebles v. Puig*, 223 So. 3d 1065, 1069 (Fla. 3d DCA 2017) (finding that a plaintiff could not sustain a fraud claim when the plaintiff's damages were based on a defendant's failure to honor its contractual obligations). The *Peebles* court stated:

- 16 -

It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud. *La Pesca Grande Charters, Inc. v. Moran,* 704 So. 2d 710, 712–13 (Fla. 5th DCA 1998) (explaining the difference between fraud in the inducement and fraud in the performance, the latter not constituting a separate cause of action from that of a concurrent breach of contract action). It is similarly well settled that, for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach. *Rolls v. Bliss & Nyitray, Inc.,* 408 So. 2d 229, 237 (Fla. 3d DCA 1981). Both of these legal principles are rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law

*Id.* at *1068.

For the above reasons, the Court should grant summary judgment as to Count IV.

## IV.   PLAINTIFF CANNOT ESTABLISH AN OVERTIME CLAIM UNDER THE FLSA.

In Count V, Plaintiff states that the Trust violated the FLSA because she did not receive overtime, and seeks $245,606.40 in overtime pay. Second Am. Compl. ¶¶ 20, 21.  Plaintiff's overtime claim should be dismissed for two reasons.

***First***, the FLSA provides that "any employee who is employed in a domestic service in a household and who resides in such a household" is not entitled to overtime.  29 U.S.C. § 213(b)(21) (the "**Live-in Domestic Service Exemption**"); 29 C.F.R. § 552.102(a) ("section 13(b)(21) provides an exemption from the Act's overtime requirements for domestic service employees who reside in the household where employed.").  "The term includes services performed by employees such as companions, babysitters, cooks, waiters, butlers, valets, maids, housekeepers, nannies, nurses, janitors, laundresses, caretakers...."  29 C.F.R. § 552.3; *U.S. v. Sabhnani*, 599 F. 3d 215, 256 (2d Cir. 2010) ("Because there is no doubt that Samirah and Enung lived in the Sabhnanis' house and did so as permanent residents for a considerable time, we conclude that the maids were 'employee[s] who [were] employed in domestic service in a household and who reside[d] in such household' for the purpose of the §213(b)(21)

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

exemption."); *Almeida v. Aguinaga*, 456 F. Supp. 2d 505, 508 (S.D.N.Y. 2006) (plaintiff considered a domestic servant and therefore not entitled to overtime compensation under FLSA); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (June 7, 1974), available at 1974 WL 38711 ("The housekeeper employed in that household, however, would be subject to the $1.90 an hour minimum wage, but she would be exempt from the Act's overtime provisions, since employees employed in domestic service in a household who reside in such household are exempt from the Act's overtime requirements.").

A live-in domestic service employee must reside on the employer's premises either "permanently" or for "extended periods of time."   Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,474 (Oct. 1, 2013).  This Court explained:

> The Department of Labor recently stated that a domestic service employee is considered to be a "live-in" domestic service employee if she "resides on his or her employer's premises on a 'permanent basis' or for 'extended periods of time.'" Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454, 60,474 (Oct. 1, 2013); *see also* 29 C.F.R. 785.23. "Further, in accordance with the Department's existing policy, employees who work and sleep on the employer's premises for five days a week (120 hours or more) are considered to reside on the employer's premises for 'extended periods of time.'" *Id.* "If less than 120 hours per week is spent working and sleeping on the employer's premises, five consecutive days or nights would also qualify as residing on the premises for extended periods of time." *Id.* "For example, employees who reside on the employer's premises five consecutive days from 9:00 a.m. Monday until 5:00 p.m. Friday (sleeping four straight nights on the premises) would be considered to reside on the employer's premises for an extended period of time." *Id.*

*Quintero v. Lopez,* No. 15-21162-CIV-LENARD, 2016 WL 7508264, at *6 (S.D. Fla. June 6, 2016).  Hence, a worker resides on the employer's premises for an "extended period of time" when she (i) lives, works and sleeps on the employer's premises for five days a week (120 hours or more), or (ii) spends less than 120 hours per week working and sleeping on the employer's premises, but spends five consecutive days or nights residing on the premises.  *See* DOL Field Operation Handbook § 31b20.

In this case, Plaintiff admits that she is a live-in domestic service employee, was required to sleep overnight seven days a week, and worked 136 hours per week. DE 1-2, Second Am. Compl., ¶ 16. Plaintiff's interrogatory responses confirm that she slept in Mrs. Martin's residence for, at least, five (5) days per week. DE 46-3, Pl. Interrog. Response No. 13. Plaintiff concedes that her primary duties were cleaning and "caring for Ms. Martin (cooking, showering, keeping up her daily schedule, etc.)." *Id.* Accordingly, Plaintiff is a live-in domestic service employee and, pursuant to the Live-in Domestic Service Exemption, is exempt from overtime pay.

***Second***, the FLSA exempts from minimum wage and overtime pay any domestic service employee who is hired to provide "companionship services for individuals who (because of age or infirmity) are unable to care for themselves." 29 U.S.C. § 213(a)(15) (the "**Companionship Exemption**"). "Companionship services" are defined as:

> [T]he provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires assistance in caring for himself or herself. The provision of fellowship means to engage the person in social, physical, and mental activities, such as conversation, reading, games, crafts, or accompanying the person on walks, on errands, to appointments, or to social events. The provision of protection means to be present with the person in his or her home or to accompany the person when outside of the home to monitor the person's safety and well-being.

29 C.F.R. § 552.6(a). Work under the Companionship Exemption includes "activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purpose of section 13(a)(15) of the FLSA." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act (March 16, 1995), available at 1995 WL 1032475. Employees falling within the Companionship Exemption include caretakers. 29 C.F.R. § 552.3. "Considering the history and development of the home care industry, it is fair and reasonable for the exemption to benefit home care recipients and their

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

families when the families directly hire domestic service workers; the result is that the ordinary family will not also incur the financial burden of overtime pay." *Tinsley v. Covenant Care Serv., LLC*, 228 F. Supp. 3d 911, 918 (E.D. Mo. Jan. 12, 2017).   Companionship services also include "general household work," so long as the general household work "does not exceed 20 percent of the total weekly hours worked."   29 C.F.R. § 552.6.

In this case, the Companionship Exemption applies. As Plaintiff concedes, she was Mrs. Martin's "sole caretaker" and has a "mother-daughter" relationship with her.   DE 1-2, Second Am. Compl. ¶¶ 11, 15, 60-64.   Plaintiff worked as a live-in domestic services employee for Mrs. Martin due to Mrs. Martin's "declining health" and her typical duties included "cleaning Mrs. Martin's home and condo; cooking; coordinating the maintenance work in both residences, maintaining Mrs. Martin's calendar, and managing Mrs. Martin's phone calls."   *See* DE 36, Proposed Third Am. Compl., ¶¶ 13, 15.   Any general household work that Plaintiff performed was always related to Mrs. Martin's care and did not exceed 20 percent of the total hours that Plaintiff worked each week, particularly since she admits that she was coordinating the maintenance of Mr. Martin's property.   *Id.*   Accordingly, summary judgment is appropriate.   *See Rodriguez v. Jones Boat Yard, Inc.*, No. 09–23195–CIV-BANDSTRA, 2010 WL 7325250 (S.D. Fla. July 26, 2010) (granting summary judgment to defendants under the companionship services exemption); *Feldman v. Bhrags Home Care, Inc.*, No. 15-cv-5834, 2017 WL 1274055 (E.D.N.Y. Mar. 10, 2017) (granting judgment on the pleadings to employer because plaintiff's services constituted exempt companionship services.).

For the above reasons, the Court should grant summary judgment as to Count V.

## CONCLUSION

The Trust respectfully requests that the Court enter an Order granting summary judgment, and for any other relief that the Court deems just and proper.

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH

Respectfully submitted,

**SHUTTS & BOWEN LLP**
Attorneys for Defendant
200 S. Biscayne Boulevard
Suite 4100
Miami, Florida  33131
(305) 347-7337
(305) 347-7837 (Facsimile)
rllorens@shutts.com


By: *s/ Rene Gonzalez-LLorens*
      Rene Gonzalez-LLorens
      Florida Bar No. 53790


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd of August, 2018, I sent the foregoing via regular and electronic mail to the addresses listed below, as well as electronically filed the foregoing with the Clerk of the Court by using the CM/ECF which will send notice to:

Ms. Manachash Kefenie
7732 Camino Real, Apt F-401
Miami, FL 33143
Telephone: (305) 587-6384
Email: Manachash@gmail.com
*Pro Se*

*And*

Ms. Manachash Kefenie
611 Loropetalum Road
Charlotte, NC 28213

                              *s/ Rene Gonzalez-LLorens*
                              Of Counsel

MIADOCS 16728899 3

shutts.com | FORT LAUDERDALE | JACKSONVILLE | MIAMI | ORLANDO | SARASOTA | TALLAHASSEE | TAMPA | WEST PALM BEACH